LOGAN, Circuit Judge.
 

 This is an appeal from a judgment entered in favor of the First National Bank of Dewey, Oklahoma, and against Warren L. McConnico, trustee in bankruptcy. The question for decision is whether the district court correctly ruled that proceeds from a fire insurance policy paid to a secured creditor are “proceeds” from the disposition of the insured inventory within the meaning of the Uniform Commercial Code provision adopted as Okla.Stat.Ann. tit. 12A, § 9-306 (West 1963). For reasons that appear below, we conclude the district court was correct.
 

 The facts have been stipulated. McCon-nico is the trustee in the consolidated bankruptcy case of Robert L. Brown and Billie Brown, who operated a paint and gift store. The bank claims a security interest in insurance proceeds paid in connection with the destruction of collateral in which the bank held a perfected security interest.
 

 In a 1974 agreement, the Browns gave the bank a security interest in all goods, wares, merchandise, gifts, inventory, fixtures and accounts receivable owned or thereafter acquired and used in their business. The contract also covered “all additions, accessions and substitutions” to or for collateral. This interest was given to secure a note executed by the Browns in favor of the bank in the amount of $36,-628.31, and future advances. The agreement was properly perfected.
 

 The Browns also covenanted in the agreement to
 

 insure the Collateral with companies acceptable to Bank against such casualties and in such amounts as Bank shall require. All insurance policies shall be written for the benefit of Debtor and Bank as their interests may appear, and such policies or certificates evidencing the same shall be furnished to Bank. All policies of insurance shall provide at least ten (10) days prior written notice of cancellation to Bank.
 

 Insurance covering loss of inventory by fire was obtained, but only the Browns were named insureds; no mortgage clause was provided naming the bank as a loss payee.
 

 Thereafter, the business was destroyed by fire. The Browns received a $25,000 check from the insurance company for the loss of
 
 *583
 
 inventory. The bank then brought an action in state court to replevin the insurance check, and by judgment dated October 5, 1976, recovered the check.
 

 On December 1, 1976, the Browns were adjudicated bankrupts. McConnico, as trustee, then brought the present action. He asserted that the bank’s acquisition of the check was a transfer by the Browns to an unsecured creditor while the bankrupts were insolvent and within four months of the filing of the voluntary petition in bankruptcy, and therefore was a voidable preference.
 

 The district court held the bank had a continuously perfected security interest in the insurance “proceeds” within the meaning of Okla.Stat.Ann. tit. 12A, § 9-306 (West 1963), expressly rejecting the ruling to the contrary by the bankruptcy judge. This appeal ensued.
 

 Section 9-306(1), adopted by Oklahoma in 1961, defines “proceeds” to “include[ ] whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of.” There appears to be no decision of the Oklahoma courts considering the question whether proceeds of insurance on collateral are proceeds of collateral within the meaning of this section. Courts in other jurisdictions have considered the question, but are divided concerning its proper resolution. Our task then is to apply the law as we think the Oklahoma Supreme Court would.
 

 The cases upon which the trustee relies advance three principal theories for the conclusion that insurance proceeds arising from the destruction of collateral are outside of the protection of the Uniform Commercial Code (UCC). First is that section 9-104(g), providing that Article 9 does not apply to “a transfer of an interest or claim in or under any policy of insurance,” precludes treatment of proceeds of insurance on collateral as proceeds of collateral under section 9-306.
 
 See National Bedding & Furniture Indus., Inc. v. Clark,
 
 252 Ark. 780, 481 S.W.2d 690 (1972). But, as several courts have recognized, section 9-104(g) applies only to the creation of security interests in the insurance policy itself.
 
 E. g., Paskow v. Calvert Fire Ins. Co.,
 
 579 F.2d 949, 953 (5th Cir. 1978);
 
 PPG Indus., Inc. v. Hartford Fire Ins. Co.,
 
 531 F.2d 58, 60 (2d Cir. 1976). In the instant case, it is clear the bank does not claim a security interest in the fire, insurance policy; rather, it asserts an interest in monies that have already been paid, albeit pursuant to an insurance policy.
 

 Second is a theory based upon the common law rule that insurance proceeds are paid pursuant to a personal contract between the assured and the insurance company and do not attach to or run with the property; since payments under an insurance policy arise from a personal contract, they cannot be “proceeds” within the meaning of section 9-306(1) because the latter arise only from the disposition of the property.
 
 See, e. g., Quigley v. Caron,
 
 247 A.2d 94 (Me.1968);
 
 Universal C. I. T. Credit Corp. v. Prudential Inv. Corp.,
 
 101 R.I. 287, 222 A.2d 571 (R.I.1966). Oklahoma accepts the personal contract theory of insurance,
 
 see, e. g., Welch v. Montgomery,
 
 201 Okl. 289, 205 P.2d 288 (1949). But we do not think that solves the problem presented to us.
 

 In its usual context, the personal contract rule is applied to deny the claim of a mortgagee to proceeds of a fire insurance contract when the mortgagee was not named as insured in a loss-payee or mortgage clause.
 
 Id.
 
 But an important exception to the rule arises if the mortgagor promises to insure the property for the mortgagee’s benefit: even though the insurance proceeds are not made payable to the mortgagee, the latter nevertheless acquires an equitable lien on the proceeds to the extent of the indebtedness.
 
 See, e. g., Frensley Bros. Lumber Co. v. Fireman’s Fund Ins. Co.,
 
 104 Okl. 8, 229 P. 598 (1924);
 
 Smith & Furbush Mach. Co. v. Huycke,
 
 72 Okl. 30, 177 P. 919 (1919). This lien is superior to the interests of other general creditors of the mortgagor.
 
 Huycke,
 
 177 P. at 920.
 

 In the case before us, an Oklahoma state court determined that at least as between
 
 *584
 
 the Browns and the bank, the latter was entitled to the insurance proceeds.. While the particulars and reasoning of that court are not in the appellate record, it is stated the bank was allowed to replevin the insurance check; thus it seems clear the case was regarded as falling within the exception. The insurance policy here did not contain a loss-payee or mortgage clause naming the creditor bank, but the security agreement clearly manifests the parties’ intention that the Browns would insure the collateral for the bank’s benefit. That Oklahoma law would protect the bank’s interest against the claims of other creditors in these circumstances is persuasive evidence that the Oklahoma courts would not employ the contractual theory to deny the bank the protection afforded by section 9-306.
 

 The third principal theory for holding that section 9-306(1) does not apply to proceeds from insurance on collateral is derived from a literal reading of that section. Focusing upon the verbs “sold,” “exchanged,” and “collected,” and upon the reference in subsection 9-306(2) to “action” of the debt- or,
 
 [1]
 
 some courts reason that proceeds can arise only from voluntary disposition of the collateral; destruction by fire is involuntary (assuming, of course, the absence of arson) and therefore beyond the reach of section 9-306.
 
 See, e. g., Quigley v. Caron,
 
 247 A.2d 94 (Me.1968);
 
 Universal C. I. T. Credit Corp. v. Prudential Investment Corp.,
 
 101 R.I. 287, 222 A.2d 571 (1966).
 

 Although this reasoning has some plausibility, we are persuaded that the Oklahoma Supreme Court would not adopt it. Section 9-306(1) itself gives a nonexclusive definition of proceeds, and we can think of no distinction justifying protection of proceeds from voluntary dispositions of collateral, but nonprotection for involuntary destruction of collateral. The Act is to be liberally construed to effectuate its purposes, Okla.Stat.Ann. tit. 12A, § 1-102(1) (West 1963), and section 9-306 obviously was designed to protect a secured creditor’s interest in collateral through permutations and substitutions. It seems to us antithetical to the purposes of the UCC to deny priority to a creditor who secured the agreement of the debtor to insure against involuntary loss of the collateral. Thus, we hold that proceeds from casualty insurance on collateral are proceeds of collateral, at least when the parties intend that the casualty insurance redound to the secured creditor’s benefit.
 
 Accord, Paskow v. Calvert Fire Ins. Co.,
 
 579 F.2d 949 (5th Cir. 1978);
 
 PPG Indus., Inc. v. Hartford Fire Ins. Co.,
 
 531 F.2d 58 (2d Cir. 1976);
 
 Fireman’s Fund Am. Ins. Co. v. Ken-Lori Knits, Inc.,
 
 399 F.Supp. 286 (E.D.N.Y.1975);
 
 Insurance Management Corp. v. Cable Serv. of Florida, Inc.,
 
 359 So.2d 572 (Fla.App.1978);
 
 First Nat’l Bank of Highland v. Merchant’s Mutual Ins. Co.,
 
 89 Misc.2d 771, 392 N.Y.S.2d 836 (Sup.Ct.1977).
 

 In making this determination, we are influenced also by the fact that in 1972 the Commissioners on Uniform State Laws amended section 9-306(1) to provide that “[ijnsurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than party to the security agreement.” Commentary accompanying the 1972 version states the purpose of the new sentence is to “make[ ] clear that insurance proceeds from casualty loss of collateral are proceeds within the meaning of this section.” U.C.C. § 9-306, Comment 1 (1972). The Oklahoma legislature has not adopted the 1972 version, but we do not construe its failure to act as acceptance of the contrary view. We believe the Oklahoma Supreme Court would view the 1972 amendment as giving'some evidence of the original drafters’ intent to include proceeds from insurance on collateral within the scope of section 9-306(1), as did
 
 Paskow v. Calvert Fire Ins. Co.,
 
 579 F.2d 949, 954 (5th Cir. 1978), and
 
 PPG Indus., Inc. v. Hartford Fire Ins. Co.,
 
 531 F.2d 58, 61 (2d Cir. 1976).
 

 AFFIRMED.
 

 [1]
 

 . Okla.Stat.Ann. tit. 12A, § 9-306(2) (West 1963) provides, in pertinent part, that “a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party . . . .”