**In re Gerald Patrick ABBOTT, a/k/a Pat Abbott, d/b/a Abbott Farms and Beverly Louise Abbott d/b/a Beverly Abbott Insurance and Tax Service, Debtors.**

**Bankruptcy No. BK–80–2580.**

United States Bankruptcy Court,
W. D. Oklahoma.

Oct. 7, 1982.

---

Herbert M. Graves, of Sullivan, Graves, Combs & Densmore, P. C., Oklahoma City, Okl., for debtor Gerald Patrick Abbott.

Roger Griffith, Asst. U. S. Atty., Oklahoma City, Okl., for the Farm Home Administration.

## MEMORANDUM OPINION

ROBERT L. BERRY, Bankruptcy Judge.

### Statement

This matter appears upon application of the debtor to determine his rights to insurance proceeds arising from an accident that totally destroyed a John Deere tractor and a theft loss of 3 Motorola CB radios. All four items were subject to a security interest of the Farm Home Administration.

### Issues

Is the Farm Home Administration entitled to the insurance proceeds of a casualty loss, even though they are not a loss payee under the insurance contract.

### Facts

The stipulated facts are:

1. The debtor is a farmer, who is presently under a Chapter 11 Reorganization, which was filed on December 18, 1980.

2. In August of 1981, the debtor had an accident with a 1975 John Deere 7520 tractor. The tractor overturned, and was subsequently totaled out by the insurance company.

3. The Motorola CB radios were stolen sometime during this proceeding (the exact time not being of record).

4. The insurance company paid to the debtor, with the consent of the Farm Home Administration, the sum of $8,119.90 for the loss of the tractor, and $920.00 for the theft of the Motorola CB radios. Those funds were escrowed by the attorney for the debtor-in-possession.

5. The insurance policy lists the Farm Home Administration as a second mortgagee upon the real property of the debtor estate.

6. The security instruments signed by the debtor with the Farm Home Administration states:

"Debtor warrants, covenants, and agrees that: ... debtor will (4) insure the collateral in such a manner as may be required by the Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance..."

### Law

The debtor claims that because the Farm Home Administration is not a loss payee of the insurance contract, then they are not entitled to the proceeds from a casualty loss suffered by the debtor.

The debtor relies upon two Oklahoma cases which predated Oklahoma's adoption of the Uniform Commercial Code (Title 12A, Oklahoma Statutes).

The Farm Home Administration bases its claims upon the equity provision of 11 U.S.C., section 361(3) which states:

"When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity inproperty (sic), such adequate protection may be provided by—

"(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

Farm Home Administration's argument is more correct than that of the debtor, but their interests are more properly controlled by the Uniform Commercial Code.

Each of Farm Home Administration's loans is backed by a properly perfected UCC-1 filing statement. A filing statement dated November 14, 1978, number 2827, filed in Kiowa County, Oklahoma, states: "1. This Financing Statement covers the following types of collateral, including proceeds and products thereof..." Attached thereto is a list of personalty that is covered by the security instrument. Said list includes "1—Tractor 7520 J.D." and "3 —radios"

12A Okla.Stat. (1981), section 9–306 states in pertinent part:

" 'Proceeds includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except as to the extent that is payable to a person other than a party to the security agreement."

Further, prior to the adoption of this provision by the Oklahoma Legislature in 1981, the 10th Circuit Court of Appeals stated:

"... First is that section 9–104(g), providing that Article 9 does not apply to 'a transfer of an interest or claim in or under any policy of insurance,' precludes treatment of proceeds of insurance on collateral as proceeds of collateral under section 9–306. But as several courts have recognized, section 9–104(g) applies only to the creation of security interests in the insurance policy itself ...

"Second is a theory based upon the common law rule that insurance proceeds are paid pursuant to a personal contract between the assured and the insurance company and do not attach to or run with the property; since payments under an insurance policy arise from a personal contract, they cannot be 'proceeds' within the meaning of section 9–306(1) because the latter arise only from the disposition of the property. Oklahoma accepts the personal contract theory of insurance ...

"In its usual context, the personal contact rule is applied to deny the claim of a mortgagee to proceeds of a fire insurance contract when the mortgagee was not named as insured in a loss-payee or mortgage clause. But an important exception to the rule arises if the mortgagor promises to insure the property for the mortgagee's benefit: even though the insurance proceeds are not made payable to the mortgagee, the latter nevertheless acquires a equitable lien on the proceeds to the extent of the indebtedness. This lien is superior to the interests of other general creditors of the mortgagor ...

"The third principal theory for holding that section 9–306(1) does not apply to proceeds from insurance on collateral is derived from a literal reading of that section ...

"Although this reasoning has some plausibility, we are persuaded that the Oklahoma Supreme Court would not adopt it. Section 9–306(1) itself gives a nonexclusive definition of proceeds, and *we can think of no distinction justifying protection of proceeds from voluntary dispositions of collateral, but nonprotection for involuntary destruction of collateral ... It seems to us antithetical to the purposes of the UCC to deny priority to a creditor who secured the agreement of the debtor to insure against involuntary loss of the collateral ...*" (emphasis added). *Brown v. First National Bank of Dewey,* 617 F.2d 581 (1980).

### Conclusion

The contract required the debtor to keep the collateral insured, and had the debtor failed to do so, the Farm Home Administra-

tion could have purchased the insurance, or called the mortgage in default.

The fact that the Farm Home Administration did not specifically tell the debtor to insure the collateral for a specific amount does not in any way relieve the debtor of his responsibility to keep the collateral insured.

Further, had the debtor failed to maintain insurance upon the collateral the mortgagee would have the absolute right to come before this court for adequate protection as provided in 11 U.S.C., section 361. Failure to so adequately protect the collateral would have allowed for the automatic stay being lifted as provided for in 11 U.S.C., section 362(d)(1).

ACCORDINGLY IT IS HEREBY ORDERED THAT:

1. The Farm Home Administration is entitled to recover the proceeds from both insurance claims.

2. The attorney for the debtor-in-possession shall turn over to the attorney for the Farm Home Administration the sum of $9,039.90.

3. Such funds shall be applied to the outstanding balance owed by the debtor-in-possession.